IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

STARLIGHT DISTRIBUTION, INC.,
a Florida corporation, and SYED ALI
RAZA and IRAM HUSSAIN RAZA,

      Plaintiffs,

v.                                        Case No. 22-81091-CIV-SMITH

U.S. BANK, N.A., as Trustee for
Velocity Capital Loan Trust 2022-3

By its Registered Agent:
C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

      Defendant.

_____/

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES**

      COME NOW Plaintiffs Starlight Distribution, Inc., Syed Ali Raza ("Syed") and Iram Hussain Raza ("Iram"), and file this Complaint for Declaratory Relief and for Damages, and state:

**VENUE**

      1.     This matter concerns real property located in Palm Beach County, Florida. The real property which is the subject of this suit is described as "Lot 26, Block G2, Oaks at Boca Raton Plat Eight, according to the map or plat thereof, as recorded in Plat Book 103, Page(s) 115, of the Public Records of Palm Beach County, Florida" (the "Property").

      2.     The actions undertaken by Defendant is damaging Plaintiffs who at all times pertinent resided and otherwise conducted business in Palm Beach County, Florida.

3.     Defendant is a foreign business but regularly does business in Palm Beach County, Florida.

## GENERAL ALLEGATIONS

4.     Plaintiffs Syed and Iram are the holders of legal title to the Property.

5.     Prior to Plaintiffs owning said Property, the Property was owned by Starlight Distribution, Inc. ("Starlight"), which is a Florida corporation in good standing whose sole officer is Iram Hussain Raza ("Iram").  See "Exhibit A."

6.     In January, 2022, Starlight inquired about refinancing the Property and was informed by Robert Houston ("Houston"), who held himself out as a mortgage broker, that Starlight would need a cosigner to obtain said refinancing.

7.     Starlight cooperated with Houston, who is located in Tampa, Florida, for several months until Houston began to avoid responding to Starlight.

8.     On May 9, 2022, a Commercial Mortgage, Security Agreement and Assignment of Leases and Rents encumbering the Property was recorded in the official records of Palm Beach County, Florida at Book 33538, Page 117 (hereinafter, the "Mortgage").  See "Exhibit B."

9.     The Mortgage was signed by someone purporting to be a director of Starlight, but who is unknown to Starlight, and purports to grant rights over the Property to Posh Lending, Inc. ("Posh"), a California corporation.  Posh is Defendant's predecessor-in-interest.

10.     Despite numerous demands made by Starlight to Defendant's servicer, Houston and Posh, Starlight has been unable to obtain any documents pertaining to a closing or which otherwise which resulted in the Mortgage.  Starlight is, however, receiving a monthly mortgage payment invoice from Defendant's servicer who named by Plaintiff as the original defendant.

11.     The Mortgage was assigned to Defendant, which assignment was recorded at

Official Records Book 33752, Page 154 of the public records of Palm Beach County, Florida on August 2, 2022.

## COUNT I – DECLARATORY RELIEF

12.     Plaintiffs reincorporate the allegations contained in paragraphs 1 through 11, inclusive, as if presented within this count.

13.     Starlight did not authorize Defendant to any predecessor-in-interest to enter into a mortgage encumbering the Property.

14.     The unauthorized Mortgage is clouding Plaintiffs' title to the Property.

15.     As a result of this cloud on title to the Property, Syed and Iram are precluded from obtaining more favorable financing secured by the Property and continue to be damaged.

WHEREFORE, Plaintiffs seek declaratory relief establishing that the Mortgage is void ab initio.

## DAMAGES

16.     Plaintiffs reincorporate the allegations contained in paragraphs 1 through 11, inclusive, as if presented within this count.

17.     At all times pertinent, Houston and Posh served as agents for Defendant or its predecessor in interest.

18.     As the direct and proximate result of the recording of the unauthorized Mortgage against the Property, Plaintiffs are precluded from utilizing the Property's equity to improve same.

19.     In addition, the interest rate and resulting monthly payments on the unauthorized Mortgage loan are significantly higher than those that were discussed with Defendant's agent.

20.     As the direct and proximate result of Defendant's actions, Plaintiffs have and are continuing to suffer damages.

21.     Plaintiffs have, as the direct and proximate result of Defendant's actions, been required to obtain the services of undersigned counsel and to pay said counsel a reasonable fee for which Defendant should be held responsible.

WHEREFORE, Plaintiffs request judgment in their favor for damages for damages sustained as the direct and proximate result of the recording of the unauthorized Mortgage.

**S I S K I N D   L E G A L ,   P L L C**
ATTORNEYS & CONSULTANTS

_____/s/ Jeffrey M. Siskind_____
Jeffrey M. Siskind, Esq.   FBN 138746
1629 K Street, Ste. 300, NW   Washington, DC  20006
113 N. Monroe Street, 1ˢᵗ Floor  Tallassee, Florida  32301
3465 Santa Barbara Drive  Wellington, Florida  33414

TELEPHONE  (561) 791-9565
FACSIMILE  (561) 791-9581
Email:  jeffsiskind@msn.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on September 10, 2022 upon the parties registered on CM/ECF and shall be duly served upon Defendant upon issuance of an Alias Summons, after which a Return of Service shall be filed.

_____/s/ Jeffrey M. Siskind_____
Jeffrey M. Siskind, Esq.   FBN 138746

# EXHIBIT A



# Detail by Entity Name

Florida Profit Corporation
STARLIGHT DISTRIBUTION INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | P20000039308 |
| **FEI/EIN Number** | N/A |
| **Date Filed** | 05/26/2020 |
| **Effective Date** | 06/01/2020 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

19323 SKYRIDGE CIRCLE
BOCA RATON, FL 33498

**Mailing Address**

19323 SKYRIDGE CIRCLE
BOCA RATON, FL 33498

**Registered Agent Name & Address**

HUSSAIN, IRAM
19323 SKYRIDGE CIRCLE
BOCA RATON, FL 33498

**Officer/Director Detail**

**Name & Address**

Title P

HUSSAIN, IRAM
19323 SKYRIDGE CIRCLE
BOCA RATON, FL 33498

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2021 | 04/27/2021 |

**Document Images**

| | |
|---|---|
| 04/27/2021 -- ANNUAL REPORT | View image in PDF format |
| 05/26/2020 -- Domestic Profit | View image in PDF format |

Florida Department of State, Division of Corporations

# EXHIBIT B

CEN 20220198945
OR BK 33538 PG 117
RECORDED 05/09/2022 07:48:36
Palm Beach County, Florida
AMT 2,000,000.00
MTG DOC 7,000.00
INTANGIBLE 4,000.00
Joseph Abruzzo
Clerk
Pgs 0117-0133; (17Pgs)

**Return To:** POSH LENDING, INC.
PO Box 7089
Westlake Village, CA 91359 - 7089

**This Document Was Prepared By:**
Sarah Herrera
30699 Russell Ranch Rd, Ste. 295
Westlake Village, CA 91362

---

# Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

---

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this *"Mortgage"*) is entered into as of March 25, 2022, between Starlight Distribution Inc., a Florida corporation, with an address of 19323 Skyridge Circle, Boca Raton, Florida 33498 (the *"Mortgagor"*) and POSH LENDING, INC., a/an California Corporation, with an address of 17165 Newhope Street, Suite K, Fountain Valley, California 92708 (the *"Lender"*).

The real property which is the subject matter of this Mortgage consists of the following planned unit development(s): 17799 Cadena Drive, Boca Raton, FL 33496-1068 (the *"Development(s)"*).

## 1. Mortgage, Obligations and Future Advances

**1.1 Mortgage.** For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the Property described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to Lender and all obligations respecting that certain Term Note, dated March 25, 2022, by Starlight Distribution Inc. in favor of Lender in the original principal amount of $2,000,000.00 (the *"Note"*; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the *"Loan Documents"*), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

**1.2 Security Interest in Property.** As continuing security for the Obligations (as hereafter defined) the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the *Uniform Commercial Code of Florida* (the

property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder.

**1.3 Collateral Assignment of Leases and Rents.** The Mortgagor hereby irrevocably and unconditionally assigns to Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and Lender exercises its rights and remedies to collect such rents as set forth herein.

**1.4 Conditions to Grant.** Lender shall have and hold the above granted Property unto and to the use and benefit of Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

**1.5 Property.** The term *"Property"*, as used in this Mortgage, shall mean the Unit(s), as more particularly described in Exhibit A attached hereto, together with: (i) all right, title and interest now or hereafter existing, belonging or pertaining thereto; (ii) the following categories of assets as defined in the *Uniform Commercial Code*: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined, (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof, together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the *"Leases"*); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

**1.6 Obligations.** The term *"Obligation(s)"*, as used in this Mortgage, shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the

other surety, or as obligor of obligations due third persons which have been endorsed or assigned to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of $2,000,000.00 of the amounts outstanding pursuant to the terms of the Loan Documents as set forth herein. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

**1.7 Cross-Collateral and Future Advances.** It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

**1.8 Future Advances.** This Mortgage secures both existing indebtedness and such future advances or additional advances as may be made from time to time by Lender at its option to Mortgagor, or its successor in title, for any purpose permitted under this Mortgage, provided that all those future or additional advances are made within twenty years from the date of this Mortgage or within such lesser period of time as may be hereafter provided by law as a prerequisite for the sufficiency of actual notice or record notice of the optional future or additional advances as against the rights of creditors or subsequent purchasers for valuable consideration. The total amount of Obligations secured by this Mortgage may decrease or increase from time to time but the total unpaid balance so secured at any one time shall not exceed $4,000,000.00, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Property, plus interest on such disbursements at the rate then applicable to the Obligations. If, pursuant to Section 697.04 of the *Florida Statutes*, Mortgagor files a notice specifying the dollar limit beyond which future advances made pursuant to this Mortgage will not be secured by this Mortgage, then Mortgagor shall, within one (1) day of filing such notice, notify Lender and its counsel by certified mail pursuant to Section 2.6 of this Mortgage. The filing by Mortgagor of the notice specified in the prior sentence shall constitute an Event of Default hereunder.

## 2. Representations, Warranties, Covenants

**2.1 Representations and Warranties.** The Mortgagor represents and warrants that:

    (A) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

    (B) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the *"Permitted Encumbrances"*);

full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(D) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by Lender; and

(E) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

**2.2 Recording; Further Assurances.** The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of Lender in the Property and the rights of Lender under this Mortgage. Mortgagor will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the *Uniform Commercial Code* for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes Lender to file financing statements describing any agricultural liens or other statutory liens held by Lender. Mortgagor agrees to furnish any such information to Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as Lender may reasonably request for Lender (i) to obtain an acknowledgment, in form and substance satisfactory to Lender, of any bailee having possession of any of the Property that the bailee holds such Property for Lender, and (ii) otherwise to insure the continued perfection and priority of Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

**2.3 Restrictions on the Mortgagor.** The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of Lender in each instance:

(A) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.                                                    2022032322.1.0.4068-J20210329Y                                      03/2021
                                                                                                                                Page 4 of 17

material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule (*"Hazardous Substances"*); or

(C) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and Lender's interest therein against the claims of all persons and, unless Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or Lender's interest hereunder.

**2.4 Operation of Property.** The Mortgagor covenants and agrees as follows:

(A) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(B) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to Lender, provide deductible amounts acceptable to Lender, name Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least thirty (30) days prior written notice to Lender. Such policies shall include (i) a mortgage endorsement determined by Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2022032322.1.0.4068-J20210329Y

03/2021
Page 5 of 17

purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as Lender may request. The Mortgagor will furnish to Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(C) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of Lender, execute any assignment of the Leases except in favor of Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(D) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit Lender and Lender's agents, employees and representatives, at such reasonable times as Lender may request, to enter and inspect the Property and such books and records; and

(E) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

**2.5 Payments.** The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by Lender, the Mortgagor shall deposit from time to time with Lender sums determined by Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at Lender's request, provides Lender with adequate cash security, in Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by Lender. In addition, Mortgagor hereby agrees to pay any and all excise or documentary stamp taxes (including intangible taxes) plus any penalties or late charges now due and owing or hereinafter assessed in connection with this Mortgage and/or any other loan documents. If Mortgagor shall fail to pay such sums, Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

**2.6 Notices; Notice of Default.** The Mortgagor will deliver to Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

CFN 20220198945
BOOK 33538 PAGE 923
7 OF 17

any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

**2.7 Takings.** In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a *"Taking"*), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to Lender, describing the nature and extent thereof. Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for Lender and immediately pay the same to Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to Lender in amounts not exceeding the Obligations. Lender may apply such amounts to the Obligations in such order as Lender may determine.

**2.8 Insurance Proceeds.** The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to Lender and, at the option of Lender, be applied to the Obligations in such order as Lender may determine; provided, however, that if Lender shall require repair of the Property, Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for Lender and promptly paid to it.

## 3. Certain Rights of Lender

**3.1 Legal Proceedings.** Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

**3.2 Appraisals/Assessments.** Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

**3.3 Financial Statements.** Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by Lender.

**3.4 Leases and Rent Roll.** The Mortgagor shall deliver to Lender (i) during each calendar year and at such other times as Lender shall request a rent roll for the Property, in form acceptable to Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as Lender shall request executed copies of all the Leases.

**4.1 Events of Default.** *"Event of Default"* shall mean the occurrence of any one or more of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with Lender;

(B) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(C) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(D) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Lender;

(E) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(F) any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by Lender to have been false or misleading in any material respect when made;

(G) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(H) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(I) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code* 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(J) the service upon Lender of a writ in which Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(K) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(M) the termination or revocation of any guaranty of the Obligations; or

(N) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to Lender has been or may be impaired.

**4.2 Remedies.** On the occurrence of any Event of Default Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(A) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an Event of Default has occurred hereunder;

(B) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by Lender upon the Property for any reason shall not cause Lender to be a mortgagee in possession, except upon the express written declaration of Lender;

(C) With or without taking possession, receive and collect all rents, income, issues and profits (*"Rents"*) from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints Lender as its true and lawful attorney with the power for Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. Lender shall be liable to account only for such Rents actually received by Lender. Lessees under the Leases are hereby authorized and directed, following notice from Lender, to pay all amounts due the Mortgagor under the Leases to Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(D) Foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2022032322.1.0.4068-J20210329Y

03/2021
Page 9 of 17

be empowered to foreclose upon any such Portion without impairing its right to foreclose subsequently upon any other Portion or the entirety of the Property from time to time thereafter. In addition, Lender may in its discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(E) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given Lender "control" over the Property or cause Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(F) Take such other actions or proceedings as Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the *Uniform Commercial Code* or under other applicable law.

At any time on or after the date on which Lender files a complaint to foreclose this Mortgage, the court in which such complaint is filed may appoint a receiver for the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of the Mortgagor and without regard to the value of the Property. Such receiver shall have (i) the power to collect rents, issues and profits (x) during the pendency of the suit, (y) during the full statutory period of redemption (whether there be redemption or not), if any, in the case of a sale and a deficiency and (z) at any other time when Mortgagor, but for the intervention of such receiver, would be entitled to collect such rents, issues and profits and (ii) all powers which may be necessary or are permissible in such cases in order to protect, possess, control, manage and operate the Property. Mortgagor shall deliver to Lender at any time at its request therefor all agreements for deed, contracts, leases, abstracts, title insurance policies, muniments of title, surveys and other papers relating to the Property and, in the case of foreclosure thereon and failure to redeem, the same shall be delivered to and become the property of the person(s) obtaining a certificate of title to the Property by reason of such foreclosure. In the event that Lender shall enforce any right or remedy under this Mortgage by receiver, entry or otherwise, and such proceeding shall be discontinued or abandoned for any reason or shall be determined adverse to Lender, then in every such case the Mortgagor and Lender shall be restored to their prior positions hereunder and all rights, remedies and powers of Lender hereunder, at law and in equity shall be restored and in full force and effect and available to Lender.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

**4.3 Advances.** If the Mortgagor fails to pay or perform any of its obligations respecting the Property, Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

**4.4 Cumulative Rights and Remedies.** All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

**4.5 Mortgagor's Waiver of Certain Rights.** To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5. Miscellaneous

**5.1 Costs and Expenses.** To the extent permitted by applicable law, the Mortgagor shall pay to Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and Lender shall be

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022032322.1.0.4068-J20210329Y
03/2021
Page 11 of 17

a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

**5.2 Indemnification Regarding Leases.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold Lender and each of its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

**5.3 Indemnification Regarding Hazardous Substances.** The Mortgagor hereby agrees to defend and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to Lender including repayment of all Obligations.

**5.4 Indemnitee's Expenses.** If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, (including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of the Mortgagor.

**5.5 Waivers.** The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as *"Lender's Rights and Remedies"*) hereunder shall constitute a waiver thereof; and no waiver by Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under this Mortgage (nor shall anything in this Mortgage be construed as a

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022032322.1.0.4068-J20210329Y
03/2021
Page 12 of 17

agreement or transaction) but all Lender's Rights and Remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

**5.6 Waiver of Homestead.** To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Section 222.01, *Florida Statutes*.

**5.7 Joint and Several.** If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term *"Mortgagor"* shall include each as well as all of them.

**5.8 Severability.** If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**5.9 Complete Agreement.** This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersede all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**5.10 Binding Effect of Agreement.** This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

**5.11 Notices.** Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

**5.12 Governing Law.** This Mortgage shall be governed by the laws of the State of Florida.

**5.13 Reproductions.** This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

CFN 20220198945
BOOK 33538 PAGE 930
14 OF 17

of any Federal or state court sitting in Florida, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

**5.15 JURY WAIVER.**

MORTGAGOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. MORTGAGOR CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

**5.16 Riders.** The covenants and agreements of the Planned Unit Development Rider are incorporated into and supplement and amend the terms of this Mortgage.

### Signatures

Executed as of March 25, 2022.

**Mortgagor**

**Starlight Distribution Inc.**
*a Florida corporation*

_____ Director _____ 03/25/22
**Charles Thompson**                    **Date**
*Director*


_____          _____
*Witness*                        **Date**


_____          _____
*Witness*                        **Date**

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.                                    2022032322.1.0.4068-J20210329Y                    03/2021
                                                                                                          Page 14 of 17

State of ~~Florida~~   *California*

County of ___California___

This instrument was acknowledged before me by means of physical presence on
___03/25/2022_____ by Charles Thompson, Director of Starlight Distribution Inc., a
Florida corporation on behalf of the corporation. Such person(s) is/are known to me or has/have
produced ___driver's license___ as identification.

_____
Notary Public

___Shirley Guevara_____
*(Print Name)*

My commission expires: _____10/13/2024_____

SHIRLEY GUEVARA
COMM. #2335502
Notary Public - California
Riverside County
My Comm. Expires Oct. 13, 2024

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.                          2022032322.1.0.4068-J20210329Y                          03/2021
Page 15 of 17

CFN 20220198945
BOOK 33538 PAGE 932
16 OF 17

**RIVERSIDE ABSTRACT, LLC**
**As Agent for**
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**

**SCHEDULE A LEGAL DESCRIPTION**

Title No.:  **RAFL-47022**

Lot 26, Block G2, Oaks at Boca Raton Plat Eight, according to the map or plat thereof, as recorded in Plat Book 103, Page(s) 115, of the Public Records of Palm Beach County, Florida.

This is not a certified copy

CFN 20220198945
BOOK 33538 PAGE 933
17 OF 17

## Permitted Encumbrances

None



Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2022032322.1.0.4068-J20210329Y

03/2021
Page 17 of 17